GEORGE D. HARRIS, Plaintiff in Error, *v.* JOHN T. BURNS ET AL., Defendants in Error.

### October 23, 1883.

DEBTOR AND CREDITOR — MORTGAGES — REDEMPTION — EQUITY. — A creditor at large can not redeem his debtor's mortgaged land situated in another state, in a proceeding in which the debtor is not served with process.

ERROR to the St. Louis Circuit Court, WICKHAM, J. *Affirmed.*

JOHN D. POPE, for the plaintiff in error: Although a creditor at large, who has commenced suit by attachment and levied on goods and chattels of his debtor, can not, before judgment has been obtained, have equitable relief as to fraudulent judgments against his debtor, or restrain the transfer of his property, as was held in *Martin* v. *Michaels* (23 Mo. 50); nor redeem land within the state from a mortgage executed by his debtor, as was held in *Fisher* v. *Tallman* (74 Mo. 39) — for the obvious reason that there is a legal remedy which has not been exhausted — yet after the equity of redemption has been acquired, a bill to redeem will lie. — *Perrine* v. *Poulson*, 53 Mo. 309; *Matson* v. *Capelle*, *Id.* 235. And it is as clear that to reach an equity of redemption in lands situated without the state, or to have a deed absolute on its face declared to be a mortgage, resort must be had to a court of equity. If an account must be taken to show whether the loan has been repaid the remedy is likewise in equity. — *Worley* v. *Dryden*, 57 Mo. 226; *O'Neill* v. *Capelle*, 62 *Id.* 202.

JOHN J. CHANDLER, for the defendant in error: No person can, in equity, redeem a mortgage but he who is entitled to the estate of the mortgageor, or has a subsisting interest under him. A general creditor has no such interest. — *Martin* v. *Mitchell*, 23 Mo. 50; *Fischer* v. *Tallman*, 74 Mo. 39; *Himey* v. *Thomas*, 36 Mo. 378; *Merry* v.

*Freeman*, 44 Mo. 520; 2 Story Eq. Jur., sect. 1023; 4 Kent. Com. 162, 167; 1 Hilliard Real Prop. 397.

BAKEWELL, J., delivered the opinion of the court.

The petition alleges that defendant, Burns, as a member of the firm of Cherry & Co., is indebted to plaintiff in the sum of $13,400, for work and labor done, and in the sum of $5,600 for profits on work and labor which Cherry & Co. refused to allow plaintiff to perform, under a certain contract for grading a projected railroad in Georgia; that the firm of Cherry & Co. is insolvent, and its members are non-residents of Missouri; that Burns and one Smith owned sixty-five thousand acres of land in Arkansas, worth $200,000; that Burns & Smith, after the indebtedness of Burns to plaintiffs aforesaid, borrowed of defendants, Matthews & Whittaker, $32,000, for which they delivered their notes bearing ten per cent interest, and maturing in one, two, three, four, and five years from the 13th of September, 1875, secured by deed of trust upon the lands aforesaid; that Burns & Smith also delivered to Matthews & Whittaker real estate notes worth $8,000, as collateral security for this loan; that Smith then sold to Burns all his interest in this land and these collaterals; that Burns paid the first semi-annual instalment of interest to Matthews & Whittaker, and being in great pecuniary distress, was unable to pay any more; that Matthews & Whittaker threatened to foreclose, unless Burns would make prompt payment, or surrender his equity of redemption and all claim to the collaterals; that Matthews & Whittaker also demanded that Burns should convey to them eleven thousand acres of land in Arkansas, not embraced in the mortgage, and worth $15,000 and also a farm in Georgia worth $15,000; that Burns, being in great distress, yielded to these demands, and on June 3, 1876, Burns & Smith executed quit-claim deeds to Matthews & Whittaker for all these Arkansas lands, and their wives joined for the purpose of releasing dower; that Matthews & Whittaker claim that they thereby became owners,

as well of the collaterals aforesaid, as of said seventy-six thousand acres of Arkansas lands ; but that said transfers, deeds, and agreements were ineffectual as a surrender of the rights of Burns, or his creditors, to the surplus of said property after paying said loan with interest and costs, and are ineffectual as against plaintiff, because the lands and notes were worth largely more than the loan and interest, because Burns was embarrassed and advantage taken of his necessities to force hard terms on him, and because Burns & Smith were not absolutely released from liability on said loan, and were not promised any release therefrom, nor was any consideration given to either of them for said surrender, but they were only promised indulgence for an indefinite time; that Burns has removed from Missouri, and has no property within the reach of process, and that plaintiff can not secure payment of the debt due from Burns to him, unless the same is paid out of the proceeds of the property conveyed to Matthews & Whittaker ; but, if those lands are sold on the most advantageous terms, and the collaterals collected, and the proceeds applied, there will remain a large surplus from which plaintiff may be paid.

The lands are then described in full. Plaintiff further states that since said Burns & Smith executed the quitclaim deeds to the lands as aforesaid, said Matthews & Whittaker still hold them liable on their said notes, and have required them to insure their lives as security for the notes ; that said quit-claim deeds were not designed by said Burns to be an absolute relinquishment of his equity of redemption in said lands, but were intended by him only to vest the legal title to said lands in said Matthews & Whittaker as better security for said loans as to facilitate the sale of said lands in small parcels to actual settlers, and as better terms than could have been obtained had said lands been sold under said deed of trust; that, in pursuance of a secret understanding between said Burns and said

Matthews & Whittaker, said Matthews & Whittaker
have since said quit-claim, continued to sell said lands in
small parcels, at remunerative prices, and have received
cash and notes for said sales; that Matthews & Whittaker
have sold of these lands more than enough to repay their
loan, and have in their hands cash and notes, the proceeds
of these sales, which ought to be applied to pay the gen-
eral creditors of Burns.

Plaintiffs say that they file their petition as well for them-
selves as for the general creditors of Burns. The prayer is
for judgment against Burns for the amount due by him to
plaintiffs; that Matthews & Whittaker be decreed to hold
the lands, and their proceeds, and the collateral notes, in
trust to pay plaintiff's demands; for an accounting, and
for leave to redeem, and for general relief.

To this bill, Matthews & Whittaker (who alone were
served) interposed a demurrer, on which final judgment
was rendered in their favor.

The plaintiff is not a judgment-creditor of Burns. Not
only is he not a judgment-creditor, but he does not seem
likely to become so without a troublesome litigation, in
which a jury would probably be required, and in which
Burns would certainly be entitled to demand a jury, to pass
upon the question as to whether Burns owes plaintiff any-
thing, and, if so, how much, on account of the railroad con-
tracts. Burns was not served with process; nor had he any
notice of this proceeding, actual or constructive. The land
in question is not within the jurisdiction of the court.
Plaintiff has no interest in the land as legal owner, nor has
he a lien upon it. Having no estate or interest in the land
he could not redeem the land, even if situated within this
state, from a mortgage executed by his debtor. Nor is
this difficulty removed by the allegation of the quit-claim
deeds to the mortgage, because the theory of the plaintiff
is, that those deeds, absolute on their face, are, in reality,
mere mortgages.

To grant the relief asked by plaintiff would be to stretch very far anything that has ever been said, or held, in Missouri, or elsewhere, as to the power of courts of equity in certain cases to entertain a bill by a creditor at large to reach equitable assets of the debtor.

We do not at all deny that, " as to lands lying in a foreign jurisdiction, courts of equity will enforce natural equities, and compel the specific performance of contracts if the parties are within its jurisdiction." Perry on Trusts, sect. 71. And, on a proper showing, we might compel a defendant here to make a deed to lands in Arkansas. But the bill before us makes no such showing ; and we can hardly place in a stronger light the difficulties which beset the theories on which it is framed than by looking at the matter in what may be taken as the standpoint of the nominal defendant, Burns. If the prayer should be granted and a decree made as asked, what would be the opinion of that defendant as to a system of jurisprudence which in a proceeding to which he is not made a party except by naming him in the title to the suit, without any notice to him, actual or constructive, should determine that he owes several thousand dollars on account of matters growing out of a railroad contract, and then adjust for him complicated money transactions with a third person, open for him transactions which, so far as he can do so, he has closed, and make him, perhaps against his will, a mortgageor of real estate lying out of the jurisdiction, of which he has conveyed the equity of redemption to the mortgagee.

If there are any assets belonging to Burns in this jurisdiction, if Matthews & Whittaker owe him anything, as is alleged, and if he is indebted to plaintiff, and is a non-resident, it would seem that the obvious legal remedy would be to begin suit by attachment, on the ground of non-residence, against Burns by publication, and to summon Matthews & Whittaker as garnishees in that proceeding, and attach the notes and other assets of Burns in their hands.

We think the circuit court properly sustained the demurrer to the bill, and, with the concurrence of all the judges, its judgment will be affirmed.